**BANK OF COMMERCE and First National Bank of Sheridan, Petitioners,**

**v.**

**BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM and Wyoming Bancorporation, Respondents.**

No. 74–1264.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 21, 1975.

Decided March 21, 1975.

Rehearing Denied May 1, 1975.

Richard L. Eason, Simon, Eason, Hoyt & Malone, P. C., Englewood, Colo. (Henry A. Burgess, Sheridan, Wyo., and D. Monte Pascoe, Ireland, Stapleton, Pryor & Holmes, P. C., Denver, Colo. on the brief), for First Nat. Bank of Sheridan.

Donald Etra, Atty., Dept. of Justice (Carla A. Hills, Asst. Atty. Gen., and Leonard Schaitman, Atty., Dept. of Jus-

tice, on the brief), for Bd. of Governors of the Federal Reserve System.

William P. Johnson, Rothgerber, Appel & Powers, Denver, Colo. (Hanes, Carmichael, Johnson, Gage & Speight, P. C., Cheyenne, Wyo., on the brief), for Wyoming Bancorporation.

Before SETH, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The matter presented is a petition on behalf of Bank of Commerce and First National Bank of Sheridan, Wyoming seeking review of the order of the Board of Governors of the Federal Reserve System granting its approval of the application of Wyoming Bancorporation to acquire 95% of the voting shares of the Bank of Wyoming, Sheridan, Wyoming, a proposed new bank. The Bank of Commerce is a state chartered bank. The Bank of Wyoming would compete with it and with the First National Bank of Sheridan. The facts are uncomplicated:

On April 28, 1972 the Bank of Commerce applied for a new state bank in Sheridan, Wyoming. Some months after that, on July 18, 1972, the organizers of the Bank of Wyoming applied to the Comptroller of Currency for a charter. The latter application disclosed that the Bank of Wyoming would be a subsidiary of Wyoming Bancorporation, a holding company, and would be located at 1963 North Main Street in Sheridan, some 20 blocks away from the Bank of Commerce and the First National Bank of Sheridan. The Bank of Commerce and the First National Bank objected to the issuance of the charter and requested a hearing.

On September 26, 1972 the hearing was held and subsequently the State of Wyoming held a hearing on the application of the Bank of Commerce for a state charter. On July 5, 1973 the Comptroller gave preliminary approval on the condition that Wyoming Bancorporation hold all of the stock except di-

rectors' qualifying shares, and on July 31, 1973, approval was given to the application for the Bank of Commerce state charter.

On August 1 Wyoming Bancorporation sought approval from the Federal Reserve Board for its acquisition of the Bank of Wyoming, and on August 13, 1973 Bancorporation sought to stay the order of the state examiner granting the Bank of Commerce a state charter.

Inquiries were made on August 31 by the Federal Reserve Bank of Kansas City to Bancorporation asking (1) the definite location of the new bank; (2) whether the new bank would compete with the Ranchester State Bank (which is 15 miles from Sheridan); and (3) information as to the effect, if any, the state application would have on the financial status of the Bank of Wyoming.

In response to the inquiry of the Federal Reserve Bank as to definite location, Bancorporation said it intended to transfer its location to downtown Sheridan instead of 1963 North Main. The Federal Reserve Bank then formally accepted the application and a notice of the application was published in the Federal Register on September 28, 1973. It called for comments on or before October 16.

The Bank of Commerce was fully aware of the proceedings. For example, it appeared in opposition to the application of the Bank of Wyoming to the Comptroller. The Comptroller gave preliminary approval to the application on July 5, 1973. Following that, an action was filed in the United States District Court for the District of Wyoming to review that approval. The district court dismissed the Bank of Commerce complaint and that matter is now before this court on appeal, Bank of Commerce v. Smith, etc., et al., No. 74–1185.[1]

On February 11, 1974, the Comptroller recommended to the Board that it approve the holding company application. The Board gave its approval to the application on May 3, 1974.

---

1. In one of its findings the district court stated that a condition of the final approval of the granting of the charter was that the ap-

proval of the Federal Reserve Board had to be obtained and that notice of the application would be published in the Federal Register.

The instant review is pursuant to 12 U.S.C. § 1848 which allows any party aggrieved to seek review in the United States Court of Appeals. Petitioners say that they are aggrieved in accordance with 12 U.S.C. § 1850 which gives a party who will become a competitor of the applicant the right to become an adversary before the Board and to appeal an adverse order.

The doctrine of Whitney National Bank v. Bank of New Orleans and Trust Co., 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965) requires that an opponent of acquisition of a new bank by a bank holding company must first attack the proposed arrangement before the Federal Reserve Board. In a more recent case, First National Bank of St. Charles v. Board of Governors of the Fed. Res. System, 509 F.2d 1004 (8th Cir. 1975), the petitioners, as in this case, took no action until after Board approval. The appeal was dismissed by the Eighth Circuit because of failure to exhaust administrative remedies. As a result, they were held not to have been aggrieved parties under § 1848.

Petitioners here contend that the notice given in the Federal Register was legally inadequate and thus they were not required to participate in the administrative proceeding, and can suffer no legal disability on that account.

 There were two notices given in the Federal Register, one on September 28, 1973 and one on March 5, 1974. Admittedly, no notice was mailed to or served on the petitioners. On the other hand, petitioners had actual knowledge that an application was to be filed. Whether they had actual notice of the filing is another matter which is not now before us. This could become an issue of fact if the publication in the Federal Register were to be held insufficient. Undoubtedly petitioners are entitled to participate by filing objections and the Board may, in its discretion, grant a hearing. In this instance the action of the Board was taken on the basis of documentary information. Petitioners say that inasmuch as they have a right to participate under the statute, § 1850, it follows that they are entitled to actual notice of the pendency of the proceedings under the due process clause of the Constitution and that notice through the Federal Register violates procedural due process. They rely on Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) and the cases which follow it. *Mullane* holds that due process requires notice which is calculated to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. This was publication in a local newspaper of a notice to settle accounts in an estate matter. Other cases are cited by appellants, but none of these are in point either[2] since they do not involve publication in the Federal Register and are not concerned with administrative proceedings.[3]

By Act of Congress notice by publication in the Federal Register is declared

---

**2.** Robinson v. Hanrahan, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972) (state forfeiture proceedings invalid where notice was sent to appellant's home though state knew appellant was in jail); Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (notice by publication insufficient for land condemnation where property owner's address easily ascertainable); Walker v. City of Hutchison, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956) (property condemnation, notice by publication); City of New York v. New York, N. H. & H. R. Co., 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953) (city's liens on railroad property not barred by reorganization in bankruptcy where only notice was by newspaper publication); Greenfield v. Vil-

lager Industries, Inc., 483 F.2d 824 (3d Cir. 1973) (notice by publication insufficient to inform class members of need to file claim in order to participate in settlement fund); Menkarell v. Bureau of Narcotics, 463 F.2d 88 (2d Cir. 1972) (forfeiture of car invalid where only notice was by publication and agency practice seemed designed to conceal rather than disclose); Graff v. Nicholl, 370 F.Supp. 974 (N.D.Ill.1974) (seizure of abandoned cars); Miles v. District of Columbia, 354 F.Supp. 577 (D.D.C.1973) (condemnation of building).

**3.** The notice problem is somewhat different in an administrative proceeding like the one at bar in which the person objecting is not before the Board and need not be summoned.

to be notice to all persons residing within the States of the Union and the District of Columbia except in cases where notice by publication is insufficient in law. 44 U.S.C. § 1508. In our case neither the statute nor any regulation compels the Board to furnish individual notice.[4]

An important difference to be noted between the case at bar and the cases relied on by appellants is that the cases cited have to do with direct deprivations of property. Ours does not.

We also note and consider the fact that there is no assurance that petitioners would have been entitled to a hearing even if specific notice had been given. The Board had the authority to grant one in its discretion.

One final consideration is that the petitioners were not parties directly involved in the proceedings before the Board. Because of this the Board was not obligated to summon them to appear, and they had some duty to ascertain the state of the proceedings, particularly since they knew that Bancorporation was compelled to obtain approval from the Federal Reserve Board and that the Federal Register was the medium for giving notice. Furthermore, they were represented by competent, knowledgeable lawyers who were also aware of the general conditions. Also, these proceedings were pending either before the Reserve Bank or the Federal Reserve Board from August 1, 1973 until May 3, 1974.

Finally, we regard as significant the fact that the petitioners do not claim lack of actual notice. The principle they strive for is that due process requires notice by mail, at least. But they advance it on an abstract basis.

There is little law dealing with the adequacy of notice in the Federal Register in administrative law cases and we have found no direct authority. The two administrative law proceedings cases which we have found both hold notice in the Federal Register to be sufficient.

See North American Pharmacal, Inc. v. Department of Health, Education and Welfare, 491 F.2d 546 (8th Cir. 1973), and see Buckner Trucking, Inc. v. United States, 354 F.Supp. 1210 (S.D.Tex.1973).

We do not say that notice by publication in the Federal Register would be sufficient in all cases. We do hold that it is sufficient here.

\* \* \*

We have examined the substantive contentions offered by petitioners and find them to be wholly lacking in merit.

Accordingly, we affirm the Federal Reserve Board's determination approving the issuance of authority to the respondents.

---

4. The statute is silent on the question of notice to competitors. The Board's regulations, which were followed here, require publication in the Federal Register. 12 C.F.R. § 262.3(g).