BANK OF BOULDER, Petitioner,

v.

BOARD OF GOVERNORS OF the
FEDERAL RESERVE SYSTEM
et al., Respondents.

No. 75–1406.

United States Court of Appeals,
Tenth Circuit.

June 4, 1976.

Richard L. Eason, of Simon, Eason, Hoyt & Malone, P. C., Englewood, Colo., for petitioner.

Mark N. Mutterperl, Atty., App. Section, Civ. Div., Dept. of Justice, Washington, D. C. (Rex E. Lee, Asst. Atty. Gen., and Leonard Schaitman, Atty., App. Section, Civ. Div., Dept. of Justice, Washington, D. C., with him on the brief), for Federal respondents.

W. P. Johnson, of Rothgerber, Appel & Powers, Denver, Colo., for respondent, Westland Banks, Inc.

Before LEWIS, Chief Judge, SETH, Circuit Judge, and MORRIS, Chief Judge *.

PER CURIAM.

The Bank of Boulder (appellant) seeks review pursuant to section 9 of the Bank Holding Company Act, 12 U.S.C. § 1848, of an order of the Board of Governors of the Federal Reserve System (Board), granting the application of Westland Banks, Inc. for approval of the acquisition of ninety-eight per cent of the voting shares of Gunbarrel National Bank, a proposed new bank in Boulder, Colorado.

Appellant opened a state chartered bank in Boulder, Colorado, on March 2, 1972, serving an area extending from near the Rocky Mountains to a point southwest of Hygiene and then to Niwot, Colorado. In 1973, Westland filed an application with state banking authorities to move its subsidiary, the Erie Bank, a state bank, to an area near Boulder called Gunbarrel. After a hearing at which appellant appeared as a protesting witness, the Colorado Banking

* Of the United States District Court for the Eastern District of Oklahoma.

Board denied Westland's request, finding that the area proposed to be served by Westland's bank overlapped the primary service area of the Bank of Boulder. In the October 26th decision, the state board held that to grant the proposed relocation of the Erie Bank would result in the creation of two weak and unprofitable banks in the Boulder area.

On November 5, 1973, Westland filed an application for a federal charter for a proposed new bank with the Comptroller of the Currency. The proposed location for the new bank was identical to the location to which the Erie Bank was to be moved. Appellant submitted a written protest to the application, and the Comptroller held a public hearing on the application at appellant's request. The Comptroller granted preliminary approval for the proposed Gunbarrel National Bank, conditioned on the ownership of the bank by the holding company concerned, Westland Banks, Inc.

Thereafter Westland applied to the Board of Governors of the Federal Reserve System for approval to acquire the shares of the new bank. Such application was required by section 3(a)(3) of the Bank Holding Company Act, 12 U.S.C. § 1842(a)(3). Westland's application followed established regulatory requirements, including a description of the manner in which the proposed new bank would serve the convenience and needs of the area. The Federal Reserve Bank of Kansas City, acting as investigatory agent of the Board, asked Westland for further information on the economic impact of the proposed bank. Westland responded by submitting an economic feasibility study outlining area economic activity and projections for business in general and banking institutions in particular. With the submission of additional information, the application was completed and transmitted to the Board for consideration.

The Board in turn forwarded copies of the application to appropriate parties, including the State Banking Commissioner of Colorado. The application was also published in the Federal Register and all interested parties were invited to comment.

Pursuant to 12 U.S.C. § 1850 appellant protested the application and requested a hearing before the Board to oppose approval of the charter. Appellant argued that the Comptroller's preliminary approval of the charter was arbitrary and capricious and not supported by substantial evidence. Appellant also argued that Westland had failed to establish the public need for another bank in the area. Attempting to establish these arguments, appellant presented written materials as well as the transcript of the hearing held by the Comptroller.

The Board responded, noting that under section 3(b) of the Bank Holding Company Act, 12 U.S.C. § 1842(b), there was no statutory requirement that the Board hold a hearing unless the Comptroller's office recommended that the subject application be denied. Appellant was requested to submit reasons why a written presentation would not suffice in lieu of a formal hearing. Appellant told the Board that a hearing was needed because of substantial deterioration in the Boulder area economy since the Comptroller first granted preliminary approval of the application. Additional material showing a downswing in the area's economy was submitted by appellant. The Comptroller also submitted comments on the application, indicating that in its opinion the proposed new bank would stimulate competition and serve the needs of the Boulder community.

The Board of Governors denied appellant's request for a hearing, and issued its unanimous order approving Westland's application to acquire the bank.

Appellant argues on appeal that the actions of the Comptroller were improper; that the denial of a hearing by the Board of Governors was arbitrary and capricious; and that the Board's findings are not supported by substantial evidence.

Appellant here contends that the actions of the Comptroller were improper. It says that the Comptroller's preliminary approval of the charter was attended by such a fail-

ure to explain its action as to frustrate judicial review. The argument is also posed that the Comptroller's decision was arbitrary and capricious. Appellee counters with the argument that the actions of the Comptroller under the facts of this case are not within the appellate jurisdiction of this court.

In *Whitney National Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386, the Supreme Court considered the relationship between the Comptroller and the Board of Governors of the Federal Reserve System in an application for charter under the Bank Holding Company Act. The Supreme Court said:

> "We believe Congress intended the statutory proceedings before the Board to be the sole means by which questions as to the organization or operation of a new bank by a bank holding company may be tested. . . .
>
> . . . . .
>
> "It follows that it is the exclusive function of the Board to act in such cases and contests must be pursued before it, not before the Comptroller." 379 U.S. at 419–420, 85 S.Ct. at 557.

Commenting on the role of the Comptroller in an action under the Bank Holding Company Act, the Court also stated:

> " . . . [T]he decision here approving the organization of the Whitney-Jefferson Bank is not for the Comptroller. He only checks the condition of the new bank, its capital, directorate, etc., as provided by the National Bank Act. . . ." 379 U.S. at 423, 85 S.Ct. at 559. (Emphasis added).

The Court ordered the action dismissed.

This court, in *Bank of Commerce v. Smith*, 513 F.2d 167 (10th Cir.), described the role of the Comptroller in matters related to the Bank Holding Company Act. There, competing banks sought review of the preliminary approval given by the Comptroller to the organization of a national bank as a subsidiary of a bank holding company. The district court dismissed the action and this court affirmed. The plaintiff banks asserted, as does appellant here, that the Comptroller's approval should be set aside because findings and conclusions were not made and the decision was arbitrary and capricious. 513 F.2d at 169. This court first noted that the case of *Camp, Comptroller v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106, outlined the applicable standard of review of the Comptroller's action upon application for charter by an independent bank. But we recognized the different role of the Comptroller in proceedings involving the Bank Holding Company Act. In refusing to consider whether his action in the case was arbitrary and capricious, we stated: " . . . [I]t is obvious that this issue is not reached because of the dual approval required here of the new bank as a subsidiary of a holding company . . . " This court held that the action was governed by *Whitney Bank* and dismissed the appeal.

 The Supreme Court in *Whitney Bank* specifically noted that the decision approving the plans of a bank holding company "is not for the Comptroller," and that his role is limited to checking the financial condition of the new bank. 379 U.S. at 423, 85 S.Ct. 551, 13 L.Ed.2d 386. Furthermore, in conducting its investigation under the Bank Holding Company Act, the Board of Governors includes " . . . the same factors as required to be considered by the Comptroller under the National Bank Act." *Bank of Commerce v. Smith*, 513 F.2d 167 (10th Cir.). Since both agencies consider the same factors and since it is the "exclusive function of the Board to act in such cases," *Whitney Bank*, the decision of the Comptroller is not subject to independent review. Instead review of proceedings under the Bank Holding Company Act is limited to the actions of the Board of Governors.

 Appellant argues that the Board's denial of its request for a hearing was arbitrary and capricious. However, where, as here, the Comptroller recommends approval of the application, it is established that a protestant has no constitutional right

to a hearing before the Board. *Commercial National Bank of Little Rock v. Board of Governors,* 451 F.2d 86 (8th Cir.). Nor has it a statutory right. *Northwest Bancorporation v. Board of Governors,* 303 F.2d 832 (8th Cir.). This court has recognized that the Board in its discretion may allow oral argument or hold hearings for the purpose of taking evidence. *Bank of Commerce v. Board of Governors,* 513 F.2d 164 (10th Cir.). Here the Board found that the written material submitted to it adequately presented all issues for consideration. Appellant had requested and received a full hearing before the Comptroller and the entire transcript of those proceedings was before the Board. Appellant does not specifically suggest any way in which the record fails to accurately portray its position.

■ The remaining issue before this court is whether the findings of the Board are supported by substantial evidence. 12 U.S.C. § 1848.

The Board made specific findings relative to the statutory factors required for determination of the application. Initially the Board found that the population and prospects for growth in the area were favorable for the introduction of another bank. This finding is substantially supported by data contained in Westland's economic feasibility study and by information gathered by the Board's own investigator, the Federal Reserve Bank of Kansas City. Appellant contends that its evidence establishes that the economic base in the Boulder area is deteriorating. The Board apparently considered appellant's data but concluded that the situation was "simply a reflection of the state of the national economy and represents only a temporary situation."

The Board found that the establishment of a new bank would not have an adverse impact on the overall prospects of the appellant bank. This finding too is supported by information gathered by the Board's investigators indicating that the appellant bank is located 3.8 miles from the proposed site of the new bank and is physically separated from it by grassland and other unoccupied areas. A specific staff finding concluded that the new bank's primary service area does not significantly overlap with the primary service area of appellant.

Finally, the Board found that the public's need and convenience would be served by the establishment of a new bank at the proposed site. The evidence shows that the new bank would be located in the vicinity of approximately a hundred business establishments in a neighborhood which may be expected to grow rapidly in the future. Additionally, a survey revealed that of responding business people in the area, more than ninety per cent indicated a need for a bank in the proposed area. The finding of the Board on this issue is also supported by substantial evidence.

The order of the Board of Governors is sustained.