**ATLANTIC COUNTY, NEW JERSEY, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 82–3087.

United States Court of Appeals, Third Circuit.

Argued Jan. 25, 1983.

Decided Aug. 25, 1983.

Salvatore Perillo, Atlantic County Counsel, Susan Lothian (argued), Asst. County Counsel, Atlantic City, N.J., for petitioner.

T. Timothy Ryan, Jr., Sol. of Labor, Mary-Helen Mautner, Acting Associate Sol., Allen H. Feldman, for Appellate Litigation Steven J. Mandel (argued), U.S. Dept. of Labor, Washington, D.C., for respondent.

Before SEITZ, Chief Judge, ADAMS and GARTH, Circuit Judges.

**OPINION OF THE COURT**

PER CURIAM.

This case requires us to decide whether the Secretary of Labor may recover funds advanced to a state or its subdivision under the 1973 version of the Comprehensive Employment and Training Act ("Act" or "CETA") when such funds were misspent. Petitioner Atlantic County challenges the Secretary's authority under the 1973 Act to order repayment of improperly spent funds from sources ·other than CETA grants. In light of the Supreme Court's decision in *Bell v. New Jersey and Pennsylvania,* —— U.S. ——, 103 S.Ct. 2187, 76 L.Ed.2d 313 (1983), we hold that the 1973 CETA statute did authorize recovery from non-CETA sources and accordingly affirm the Secretary's repayment order in this case.

I.

The present appeal comes to us from a decision by the Secretary of Labor directing Atlantic County, New Jersey to repay $18,-368.24 in misused CETA funds. On October 12, 1978, the Department of Labor issued an initial determination that Atlantic County's subgrantee had employed two CETA workers beginning in January 1978 in violation of CETA regulations. The Department affirmed this determination on January 5,

1979 and ordered repayment of the $18,-368.24 expended for the salaries of the two employees. The order was upheld by an administrative law judge on November 27, 1981. Atlantic County then filed exceptions with the Secretary of Labor, who neither modified nor vacated the decision of the administrative law judge. The repayment order therefore became the Secretary's final decision on December 27, 1981. 20 C.F.R. § 676.9(f) (1982). Atlantic County filed its petition for review by this Court on March 8, 1982.[1]

On appeal, Atlantic County contends that the Secretary of Labor lacks authority to order repayment from non-CETA sources under the 1973 Act. Although CETA was amended in 1978 to provide expressly for recovery of misused funds from non-CETA sources, the violations found in this case occurred while the 1973 Act was in effect. Atlantic County urges that a right to recoup misspent funds cannot be read into the 1973 statute. In support of its position, the County emphasizes that the 1973 Act did not mention such a remedy, even though other remedies were expressly authorized, and that Congress found it necessary explicitly to include such a sanction in its 1978 amendments to CETA.

■ The Secretary of Labor advances three grounds for affirming his repayment order:[2] first, that the right to recover misspent funds is a necessary part of the 1973 Act's legislative scheme; second, that the 1978 amendment applies retroactively to Atlantic County's violation; and third, that the common law gives the Secretary a right to recoup improperly spent funds. We affirm on the ground that the 1973 Act itself created a right in the Secretary to demand repayment of misused CETA funds from sources other than CETA grants.

## II.

In *Bell v. New Jersey and Pennsylvania, supra,* the Supreme Court held that the federal government may recover funds advanced to a state under the pre-1978 version of the Elementary and Secondary Education Act (ESEA) when such funds were improperly spent. Whatever doubts we may have about the wisdom of the *Bell* decision, it is now the law and its logic controls in this case. The language, legislative history, and administrative interpretation of the 1973 CETA statute closely parallel that which persuaded the *Bell* Court to find a right of recovery under ESEA.

Section 602(b) of the 1973 CETA statute authorized the Secretary of Labor to make "necessary adjustments in payments on account of overpayments or underpayments." 87 Stat. 878, 29 U.S.C. § 982(b) (1976). *Bell* held that similar language[3]

---

1. The Secretary asserts that Atlantic failed to file on time. Although the Secretary's decision became final on December 27, 1981, Atlantic did not receive notice of the decision until January 11, 1982. According to 29 U.S.C. § 817(a) (Supp. II 1976), petitions for review must be filed "within 60 days after notice" of the Secretary's action. Atlantic's March 8, 1982 petition to this Court fell within the 60-day time limit.

2. Preliminarily, the Secretary contends that Atlantic failed to preserve the issue of the Secretary's authority to recover these funds because the County did not raise the objection until it appealed to the Secretary of Labor. We see no reason why that was not an appropriate time to raise this issue under agency practice. *See U.S. v. L.A. Tucker Truck Lines,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952). Certainly the agency received notice of Atlantic's objection at the administrative level and had the opportunity to respond before the judiciary became involved. Moreover, because Atlantic challenges the very power of the agency to

adjudicate this issue, we doubt that it was necessary to raise the objection until Atlantic sought judicial review. Indeed, when another CETA grantee attempted to raise the issue of legal authority before the same administrative law judge who heard this case, he declared himself "not empowered to challenge the authority of the agency .... That function is reserved to the courts." *Onslow County, N.C.,* No. 81–CETA/A–185 (79–CETA–241) (4/9/82).

3. § 207(a)(1) of the ESEA, Pub.L. No. 89–10, 79 Stat. 27, 32 (1965), directed the Secretary of Education to take into account "the extent (if any) to which any previous payment to such State ... was greater or less than the amount which should have been paid to it." § 415 of the General Education Provisions Act, Pub.L. No. 91–230, 84 Stat. 164, 170 (1970), which also applied to programs under Title I of the ESEA, authorized the Secretary to make "necessary adjustments on account of overpayments or underpayments." 20 U.S.C. § 1226a–1 (Supp. V 1976).

"plain[ly]" created a right to impose liability on the states for improperly spent ESEA funds. 103 S.Ct. at 2193–94. The *Bell* Court squarely rejected the argument—also advanced by Atlantic County here—that this language creates only a right of setoff against future grants. 103 S.Ct. at 2193 n. 8. Limiting recovery to such a setoff, *Bell* concluded, would effectively insulate grantees from liability for misusing funds. *Id.*

As with ESEA, Congress amended CETA in 1978 to provide expressly for recovery of misused funds. Section 106(d)(1) of CETA as amended stipulates that "[t]he Secretary shall have authority to ... order such sanctions or corrective actions as are appropriate, including the repayment of misspent funds from sources other than funds under this chapter." Pub.L. No. 95–524, 92 Stat. 1909, 1927, 29 U.S.C. § 816(d)(1) (Supp. II 1978). During debate on this amendment, members of Congress noted approvingly that the Secretary of Labor had already been recovering misspent funds under the 1973 CETA statute. Rep. Hawkins, the amendment's floor manager, reported recovery of $23 million in misused CETA funds. 124 Cong.Rec. 25168 (1978). Rep. Cornell pointed to Chicago's repayment of $1 million in misspent CETA funds. 124 Cong.Rec. 25221 (1978). Representatives Maguire and Collins criticized the Department of Labor for having recovered only about 15% of misused funds. 124 Cong.Rec. 31021, 31026 (1978). Senator Bellmon expressed the hope that the 1978 amendment would encourage more aggressive recoupment by clarifying the Department's authority to recover funds. 124 Cong.Rec. 27789 (1978). The Court's opinion in *Bell* cited similar legislative history of an analogous 1978 ESEA amendment and concluded that Congress intended this amendment to clarify a preexisting right of recovery. 103 S.Ct. at 2194–2196.

Under both ESEA and CETA, the administering agency presumed the existence of a recoupment right. With CETA, however, we have more than the "long held" view of an agency which the *Bell* Court found persuasive. 103 S.Ct. at 2195. When Congress passed the 1973 CETA statute, it replaced a series of federal employment and training grant-in-aid programs.[4] These pre-1973 manpower programs, like CETA, set forth no express recoupment right, but the Secretary of Labor had nevertheless been auditing grantees, disallowing costs, and recovering misspent funds over a considerable period of time. *See Midlands Community Action Agency,* 73–1 BCA ¶ 9790 (November 30, 1972) (EOA and MDTA); *Metropolitan Denver Construction Opportunity Policy Committee,* 74–2 BCA ¶ 10,749 (November 30, 1973) (MDTA); *Cooperative League of U.S.A.,* 74–2 BCA ¶ 10,768 (August 14, 1974) (MDTA), *aff'd,* 578 F.2d 1390 (Ct.Cl., 1978). Congress was presumptively aware of the Secretary's interpretation when it continued and expanded these pre-1973 manpower programs in enacting the CETA statute. *Lorillard v. Pons,* 434 U.S. 575, 580–1, 98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978); *cf. Merrill Lynch v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 1839–41, 72 L.Ed.2d 182 (1982). The failure by Congress to indicate any disapproval of administrative recoupment is evidence that it ratified the Secretary's interpretation in the 1973 Act. *Id.* Such evidence is especially strong where, as here, Congress has re-enacted specific language already construed by an administrative agency. *See NLRB v. Gullett Gin Co.,* 340 U.S. 361, 366, 71 S.Ct. 337, 340, 95 L.Ed. 337 (1951). Section 602(b) of the 1973 CETA Legislation echoes two predecessors. This crucial section is identical with § 12(e) of the Emergency Employment Act, 85 Stat. 146, 154, and incorporates the provision for "necessary adjustments on account of underpayments or overpayments" from § 602(n) of the Economic Opportunity Act, 78 Stat. 508, 530.

---

4. The Manpower Development and Training Act of 1962 ("MDTA"), Pub.L. No. 87–415, 76 Stat. 23, 42 U.S.C. § 2571 *et seq.* (1966) (repealed 1973), the Economic Opportunity Act of 1964 ("EOA"), 78 Stat. 508, 42 U.S.C. § 4871 *et seq.* (1976), and the Emergency Employment Act of 1971 ("EEA"), Pub.L. No. 92–54, 85 Stat. 146, 42 U.S.C. § 2701 *et seq.* (1976) (repealed 1981).

Atlantic County seeks to distinguish the case at hand from *Bell,* pointing to CETA § 602(b)'s provision that

The Secretary may also withhold funds otherwise payable under this Act, but only in order to recover any amounts expended *in the current or immediately prior fiscal year* in violation of any provision of this Act or any term or condition of assistance under this Act. [emphasis added]

The County argues that this language evinces a Congressional intent to give the Secretary only a limited right of recovery under CETA. We do not agree. ESEA also provided for withholding future funds to sanction improper expenditures. § 210, 79 Stat. 27, 33. ESEA included this sanction as an additional response to noncompliance, not as the exclusive one. Similarly with CETA, the Secretary "may *also*" resort to the limited withholding remedy defined in § 602(b). The provision does not purport to limit other sanctions available to the government.

### III.

Since we hold that the 1973 CETA statute did create a recoupment right in the Secretary of Labor, we must address Atlantic County's substantive objections to the Secretary's findings. Atlantic maintains that the Secretary of Labor's determination was not based on substantial evidence. We see no merit in this claim. The Secretary found two violations of CETA regulations: (1) the two jobs were not listed for 48 hours so as to permit a search of the files for eligible veterans, 29 C.F.R. § 96.29 (1978); and (2) the two employees were paid more than non-CETA personnel performing comparable jobs, 29 C.F.R. § 98.24(b) (1978).

There is substantial evidence in the record supporting the claimed violations. First, the two employees were hired at 1:00 p.m. Monday, less than 48 hours (excluding weekends) after the jobs were listed on Friday morning. Second, Atlantic County made no showing that it checked the files for eligible veterans. Finally, the salaries earned by non-CETA employees who appear to have been comparable—license inspectors and building inspectors—were well below the $10,000 paid the two CETA employees in this case.

The decision of the Secretary of Labor will be affirmed.