Jolene **GUSTAFSON**, Petitioner,

v.

**BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent.**

Nos. 82–4113, 82–4213.

United States Court of Appeals, Fifth Circuit.

Oct. 17, 1983.

Rehearing and Rehearing En Banc Denied Nov. 17, 1983.

John R. Locke, Jr., Robert G. Reedy, Colin K. Kaufman, San Antonio, Tex., for petitioner.

Richard M. Ashton, Kevin J. Handly, Washington, D.C., for respondent.

Charles Rodney Acker, Valerie K. Lund, Charles L. Greef, Louis J. Weber, Jr., Dallas, Tex., for intervenor Raymondville Bank Shares, Inc.

Before TUTTLE,* POLITZ and GARWOOD, Circuit Judges.

* Circuit Judge of the 11th Circuit Court of Appeals, sitting by designation.

1. Section (a) of 12 U.S.C. § 1842 provides in pertinent part:

> It shall be unlawful, except with prior approval of the Board [of Governors of the Federal Reserve System] . . . (2) for any action to be taken that causes a bank to become a subsidiary of a bank holding company; (3) for any bank holding company to acquire direct or indirect ownership or control of any voting shares of any bank if, after such acquisition, such company will directly or indirectly own or control more than 5 per centum of the voting shares of such bank. . . .

POLITZ, Circuit Judge:

Petitioner Jolene Gustafson, a minority shareholder of the Raymondville State Bank of Raymondville, Texas (Bank), seeks review of an order of the Federal Reserve Bank of Dallas (Reserve Bank) granting the application of Raymond State Bancshares, Inc. (Bancshares) for prior approval of its acquisition of the Bank under the Bank Holding Company Act of 1956 (Act), as amended, 12 U.S.C. § 1842(a).[1] Also challenged is a decision of the Board of Governors of the Federal Reserve System (Board) declining to set aside the Reserve Bank's order. Jurisdiction to consider both decisions is conferred upon this court by 12 U.S.C. § 1848. Having determined that petitioner is not an aggrieved party within the meaning of the Act, we affirm.

### Factual and Procedural Background

This dispute is the product of a plan for the restructuring of the ownership interests in the Raymondville State Bank. The plan called for Bancshares to acquire all of the Bank's outstanding capital stock, pursuant to a merger between the latter and an interim bank to be chartered and wholly owned by Bancshares. John A. Calkins, Jack Funk, Ralph W. Hutchins, Charles B. Scott and James Whitfield (variously called "organizers" of "offerees"), who together held approximately 36% of the Bank's stock and served on its board of directors, founded Bancshares for the express purpose of operating as a bank holding company, intending to exchange their shares in the

A "bank holding company" is defined under the Act as "any company which has control over any bank or over any company that is or becomes a bank holding company by virtue of [the Act]," 12 U.S.C. § 1841(a)(1). A company "controls" a bank or a bank holding company if it:

> (A) . . . directly or indirectly or acting through one or more other persons owns, controls, or has power to vote 25 per centum or more of any class of voting securities of the bank or company; [or]
> (B) . . . controls in any manner the election of a majority of the directors or trustees of the bank or company.

12 U.S.C. § 1841(a)(2).

Bank for shares in Bancshares, shifting the debt incurred in gaining control of the Bank to the newly-formed corporation. Because Bancshares would thus become a bank holding company under the Act, it was obliged to obtain the Board's approbation of the reorganization. Completion of the merger required the approval of the holders of at least two-thirds of the shares of the existing and interim banks, as well as the approval of a majority of their boards of directors.

Bancshares' five organizers planned to extend a tender offer, in their individual capacities, to all other Bank shareholders after Bancshares' section 3(a) application was granted. Each shareholder would be offered $100 per share in cash. The five organizers and any shareholder electing to forego participation in the offer would receive shares of Bancshares equal to the number of Bank shares held, coupled with $70 per share in Bancshares' assumption of indebtedness or issuance of subordinated 12 percent debentures. Dissenting shareholders were entitled to the appraised value of their stock. Since no "company" would acquire 25 percent or more of the Bank's shares under the tender offer, see 12 U.S.C. §§ 1841(a), 1842(a), Federal Reserve Board approval of this transaction was unnecessary.

Notices describing the impending acquisition of the Bank's stock, which invited public comment, were published in the *Raymondville Chronicle/News,* a newspaper of general circulation, on November 12 and 19, 1981. Bancshares applied to the Federal Reserve Bank of Dallas on December 1, 1981, for prior approval of its bank holding company status. *See* 12 C.F.R. § 265.2(f) (1982) (delegating to the federal reserve banks the authority to initially approve bank holding company applications). All components of the proposed merger, including the tender offer, were disclosed in the application. Later that month, the Reserve Bank requested, and was supplied, supple-

mental information relating to the merits of the application. On January 14, 1982, the Reserve Bank advised Bancshares by letter that its application was complete and was being forwarded to the Board for consideration. That same day, copies of the application were transmitted to the Federal Deposit Insurance Corporation and the Texas Banking Commissioner.[2]

A notice of the proposed tender offer was published in the *Raymondville Chronicle/News* on January 28, 1982. The offer was also discussed at the Bank's annual shareholders' meeting on January 28, 1982, in which Gustafson participated by proxy.

In accordance with its regulations, 12 C.F.R. § 262.3(1), the Board published notice of Bancshares' pending application in the Federal Register, 47 Fed.Reg. 4340 (1982), soliciting public comments and requests for hearing, which were to be submitted no later than February 21, 1982. Acting on the Board's notification of non-objection, the Reserve Bank issued an order approving the application on February 26, 1982. Under 12 U.S.C. § 1849(b) and 12 C.F.R. § 262.3(j)(1)(i), the acquisition could not be concluded before the 30th day following the order's effective date, or April 21, 1982.

Documents outlining the putative tender offer and formation of the holding company were mailed to the Bank's shareholders on March 3, 1982. During March and April of 1982, 64 shareholders tendered a total of 38,448 shares to the five organizers. Shares thus tendered were accepted on the prescribed closing date for the offer, April 23, 1982, and were ultimately purchased on June 1, 1982. At a special shareholder's meeting called on June 22, 1982, the shareholders assented to the merger by a vote of 86% of the outstanding shares to 0%, with 14% abstaining. Although Gustafson attended the meeting, she abstained from either voting or exercising her dissenter's rights.

**2.** By letter dated January 29, 1982, Texas' Deputy Banking Commissioner informed the Board that he had no views or recommendations to

offer. Action on Bancshares' application for FDIC approval has been deferred by that body pending the outcome of this appeal.

Gustafson, who with 11.31% of the Bank's stock was its fourth largest shareholder,[3] first protested the Reserve Bank's approval of Bancshares' application by written petition to the Board dated March 1, 1982. Focusing on the tender offer rather than the merger, petitioner complained of the unfairness inherent in the organizers' exclusion of herself and her fellow minority shareholders from equal participation, as purchasers, in the bank holding company. Notwithstanding her broad invocation of the rights of minority shareholders, petitioner's objections were primarily based on the fact that she was not invited to join the quinary offerees. Her failure to attack the offer in the administrative proceedings was attributed to a claimed inadequacy of the published notice. For this and various other reasons, Gustafson requested that the Board vacate the Reserve Bank's February 26 order, and either remand or deny Bancshares' application.

By letter dated May 10, 1982, the Board denied Gustafson's petition for review of the Reserve Bank's order, and declined to stay the order pending judicial review. Having determined that notices published in the local newspaper and Federal Register were constitutionally sufficient, the Board opined that petitioner's failure to contest the application during the prescribed comment period deprived her of standing to challenge the order.

Proceeding nonetheless to the merits of Gustafson's objections, the Board found, as a threshold matter, that its authority to entertain complaints of minority shareholders against management was confined by § 1842(c) to an assessment of "conduct by managerial personnel toward [such] shareholders that reflects on the integrity of management." Applying this limited anal-

ysis, the Board found the terms of the tender offer and merger to be fair to the Bank's minority shareholders. The offerees thus fulfilled their fiduciary duties under Texas law. The Board rejected Gustafson's contention that the organizers together, as well as Funk alone, along with members of his immediate family and family-controlled corporations, constituted illegal bank holding companies, concluding that individual shareholders did not fall within the Act's definition of "company" absent evidence of a formalized structure or agreement. No such structure or agreement was shown. Finally, the Board found that because the March 3 tender offer could not be finalized until April 23, 1982, subsequent to the expiration of the 30-day waiting period imposed by the Reserve Bank, the offer was conducted in conformity with the Act.

This consolidated appeal involves two petitions for review. The first, No. 82–4113, assigns error to the Reserve Bank's February 26, 1982 order granting Bancshares' section 3(a) application. In the second petition, No. 82–4213, Gustafson appeals from the Board's May 10, 1982 letter denying her request for review and for a stay of the Reserve Bank's February 26 order.

### Legal Analysis

■ Only those parties "aggrieved" by an order of the Board, or a Reserve Bank acting under delegated authority, may seek judicial review in this court. 12 U.S.C. § 1848.[4] To qualify as an aggrieved party, a party must first pursue the desired remedy in the administrative forum. *Blackstone Valley Nat'l Bank v. Board of Governors,* 537 F.2d 1146 (1st Cir.1976); *Bank of Commerce v. Board of Governors,* 513 F.2d 164 (10th Cir.1975); *First Nat. Bank of St.*

---

**3.** Gustafson owned or controlled 5.5% of the Bank's stock, and was its fourth largest shareholder, prior to the extension of the tender offer. Since that time, she has more than doubled her holdings through the purchase of a block of 4,650 shares. As a result of this purchase she now holds 11.31% of the Bank's stock, and remains its fourth largest shareholder.

**4.** Section 1848 permits:

[a]ny party aggrieved by an order of the Board ... [to] obtain a review of such order in the United States Court of Appeals within any circuit wherein such party has its principal place of business, or in the Court of Appeals in the District of Columbia, by filing in the court, within thirty days after the entry of the Board's order, a petition praying that the order of the Board be set aside.

*Charles v. Board of Governors,* 509 F.2d 1004 (8th Cir.1975). *See Whitney Nat. Bank v. Bank of New Orleans,* 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965). Under its regulations, the Board need not address objections to any proposal raised after permission to form a bank holding company is granted. 12 C.F.R. § 262.3(e). Arguing that an exception to this general principle should be made in her case, Gustafson maintains that her failure to interpose formal objections during the administrative process must be excused in light of the constitutionally deficient notice.

As previously noted, Bancshares published notice of the filing of its section 3(a) application in the *Raymondville Chronicle/News* on November 12 and 19, 1981, in compliance with 12 C.F.R. § 262.3(b). The Board in turn satisfied its regulatory obligation through publication of notice of the bank holding company application in the January 29, 1982 edition of the Federal Register. 12 C.F.R. § 262.3(i)(1). Notice of the tender offer and its connection with the pending application was published on January 28, 1982, in the Raymondville newspaper and it was announced at the Bank's annual shareholders' meeting. There being no dispute that the constructive notice demanded by Board regulations was provided, the dispositive issue is whether procedural due process compels actual notice of Board proceedings. If not, petitioner's inaction effectively deprives her of standing to challenge the Reserve Bank's February 26 order.

While conceding that the Constitution does not impose a general requirement that all minority shareholders be personally notified of the application, Gustafson takes the position that because of the relationship of trust she had established with the five organizers, and their knowledge of her desire to join in the proposed tender offer as a purchaser, she was entitled to notice by mail. In her view, the offerees had reason to know of her "active and adverse interest" and hence should have timely advised her of the merger and attendant stock offering.

It is important at this juncture to emphasize the distinction, insofar as notice is concerned, between the merger which culminated in the organization of the bank holding company and the tender offer by which the merger was implemented. Only the former is subject to the Board's regulatory notice provisions. Petitioner's complaint is directed against the organizers' alleged concealment of the offer. Actual notice of the application would have had no bearing on petitioner's essential complaint.

The examination of the legal sufficiency of the published notices must be made with this distinction in mind. The adequacy of the contents of these notices is not in issue. And, as recently observed, "[where] the contents of the published notice are otherwise complete, it is well settled that publications in the Federal Register are deemed legally sufficient notice to all interested persons." *North Alabama Express, Inc. v. United States,* 585 F.2d 783, 787 n. 2 (5th Cir.1978) (citations omitted). *See* 44 U.S.C. § 1508; *Bank of Commerce v. Board of Governors.*

In *Bank of Commerce v. Board of Governors,* the Tenth Circuit upheld the Board's repudiation of a similar due process challenge leveled by potential competitors of an applicant seeking to become a bank holding company under the Act. Despite Congress' conferral of standing upon such competitors in 12 U.S.C. § 1850, our colleagues ruled that actual notice of the filing of the application was not commanded by the due process clause where the Board had published the necessary information in the Federal Register.[5] Gustafson, as a shareholder, and

---

**5.** *Citing Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and its progeny, the competitors asserted that notice by publication was deficient as to known adverse parties. In summarily disposing of this assertion, the Tenth Circuit reasoned:

*Mullane* holds that due process requires notice which is calculated to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. This was publication in a local newspaper of a notice to settle accounts in an estate matter. Other cases are cited [per-

not the statutorily designated recipient of a congressional grant of automatic standing, enjoys no greater right.

Another factor persuades us of the propriety of the Board's judgment that notice by publication conformed to the standards of procedural due process. Petitioner was cognizant of facts which should have signalled the pendency of a § 3(a) application. At some point during the summer of 1981, she had discussed with one or more of the organizers the feasibility of transferring ownership of the Bank to a bank holding company under a tender offer. A similar offer was announced at a shareholders' meeting almost one month before the Reserve Bank acted on Bancshares' application. Gustafson chose not to attend that meeting and gave her proxy to Jack Funk.[6] Though her absence does not imply a waiver of any claim, it illustrates petitioner's ready access to vital information. Moreover, she was represented by counsel familiar with the administrative mechanisms to which an aspiring bank holding company, and any party protesting its application, were required to resort. Given this combination of circumstances, we cannot disagree with the Board's determination that petitioner was under a duty to inquire further into the status of Bancshares' proposal. *See Bank of Commerce v. Board of Governors.*

■ Our conclusion that the published notices pass constitutional muster, and thus foreclose judicial review, leads us to the crux of petitioner's complaint—the organizers' ostensible dereliction of a fiduciary

duty to consult her before executing the tender offer. Whatever the merits of this assertion under state law, it has no bearing on the sufficiency of the notice pertaining to Bancshares' filing of a § 3(a) proposal. Nothing in the record suggests that the Board had knowledge of petitioner's reliance on any of the five organizers during the comment period, or was obliged for some reason to ignore the dictates of its own regulations and instruct Bancshares to furnish individual notice to petitioner. Nor does federal statutory or constitutional law impose any greater duty on Bancshares. We express no opinion about the existence or viability of any cause of action against the former Bank's directors which might lie under Texas law.

Inasmuch as the notice by publication provided in this case satisfied due process requirements, we concur in the Board's determination that petitioner's failure to participate in the administrative proceedings is not to be excused. It follows that petitioner lacks standing under 12 U.S.C. § 1848 to seek review of the Reserve Bank's order approving Bancshares' acquisition of the Bank. We therefore need not address petitioner's attack on the Board's disposition of other substantive claims urged by petitioner. As to both petitions, therefore, review is DENIED.

---

taining to direct deprivations of tangible property] . . . but none . . . are in point either since they do not involve publication in the Federal Register and are not concerned with administrative proceedings.

*Bank of Commerce v. Board of Governors,* 513 F.2d at 166 (footnotes omitted). We concur in this reasoning, noting that were we to accept petitioner's proposition that the Board should compel all corporate applicants to notify by mail the shareholders of a target bank of an imminent acquisition, the negative repercussions would be immeasurable. First, it would be virtually impossible to ascertain which shareholders possessed the "adverse and active interest" postulated by petitioner. Second, the

costs to the applicant of such a generalized notice requirement would in most instances be prohibitive, placing it beyond "the limits of practicality." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. at 318, 70 S.Ct. at 659.

6. A stockholder is chargeable, under general corporate law, with notice of what transpires "at a meeting at which he is represented by proxy, and of matters reported thereto." 5 Fletcher Cyclopedia of Corporations, § 2061 at 255 (Perm. ed. 1975). *Accord, Trinity Universal Ins. Co. v. Maxwell,* 101 S.W.2d 606 (Tex. Civ.App.1937), *writ dismissed.*