**COMMONWEALTH OF KENTUCKY ex rel. CABINET FOR HUMAN RESOURCES, Petitioner,**

v.

**William BROCK, Secretary of the United States Department of Labor, Respondent.**

No. 86–4135.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 5, 1988.

Decided April 25, 1988.

Ryan M. Halloran, John H. Walker, argued, Cabinet of Human Resources, Office of Counsel, Frankfort, Ky., for petitioner.

Robert J. Lesnick, argued, Office of the Sol., U.S. Dept. of Labor, Washington, D.C., for respondent.

Before MERRITT, KENNEDY and KRUPANSKY, Circuit Judges.

KRUPANSKY, Circuit Judge.

Petitioner Commonwealth of Kentucky (State or Kentucky), through its agency, the Cabinet for Human Resources, petitioned this court for review of the respondent Secretary of the United States Department of Labor's (Secretary or Department) final decision ordering the State to repay funds it received under the Comprehensive Employment and Training Act, 29 U.S.C. § 801 *et seq.* (CETA).[1] The record disclosed the following facts.

Congress enacted CETA in 1973 "to provide job training and employment opportunities for economically disadvantaged, unemployed, [and] underemployed persons...." 29 U.S.C. § 801. Under CETA, state and local governments acting as "prime sponsors" established employment and job training programs and received federal grants to fund those programs. Prime sponsors in turn contracted with subgrantees which trained or employed persons eligible for assistance. As a condition of participation, prime sponsors were required to maintain records to verify that expenditures from the federal grant funds were expended in compliance with the stat-

---

1. CETA was repealed in 1982, *see* Pub.L. 97–300, and replaced by the Job Training Partnership Act (JTPA). 29 U.S.C. § 1501 *et seq.* Adminis- trative proceedings begun prior to September 30, 1984 continue to be adjudicated under CETA. *See* 29 U.S.C. § 1591(e).

ute. 29 U.S.C. § 835(a). *See also* 29 U.S.C. § 813(a)(4), (5), (11), & (21).

Kentucky was a prime sponsor under CETA and accordingly received funds for the implementation of employment and training programs. Kentucky in turn made a part of these funds available to various subgrantees. The Department conducted an audit of the State's CETA programs covering the years 1981–1983, which disclosed that several subgrantees had failed to maintain adequate records to verify the expenditure of CETA funds which disclosure prompted the Department to determine that $170,407.00 had been misspent by Kentucky's subgrantees, repayment of which amount was ordered by the Secretary. *See City of St. Louis v. United States Dep't of Labor,* 787 F.2d 342 (8th Cir.1986) (failure to comply with record keeping requirements of CETA constitutes misspending of funds). *See also Kentucky v. Donovan,* 704 F.2d 288, 293 (6th Cir. 1983) ("the Secretary of Labor can take corrective action against the prime sponsor when it fails to adequately ensure that the subgrantees and contractors are carrying out the purpose and the letter of the Act") (citing 29 U.S.C. § 816(d)(1)).

The state pursued an administrative appeal from the grant officer's determination, and the matter was referred to an administrative law judge (ALJ) for hearing. The parties stipulated that the amount in dispute at the time of the hearing before an ALJ on June 5, 1985 was $107,466.00. On December 3, 1985, the ALJ issued his decision which affirmed the grant officer's disposition and ordered the State to repay $107,466.00 in misspent CETA funds. On December 23, 1985, Kentucky filed exceptions to the ALJ's decision with the Secretary pursuant to 20 C.F.R. § 676.91(f), which provides:

> *Final decision.* The decision of the administrative law judge shall constitute final action by the Secretary unless, within 30 days after receipt of the decision of the administrative law judge, a party dissatisfied with the decision or any part thereof has filed exceptions with the Secretary specifically identifying the procedure, fact, law, or policy to

which exception is taken. Any exception not specifically urged shall be deemed to have been waived. *Thereafter the decision of the administrative law judge shall become the final decision of the Secretary unless the Secretary within 20 days of such filing has notified the parties that the case has been accepted for review.*

(emphasis added). The Secretary, having failed to notify the State of Kentucky within twenty days after its exceptions had been filed that he had accepted the case for review, the ALJ's disposition became the final decision of the Secretary on January 12, 1986. On October 16, 1986, the grant officer, noting that the Secretary had not accepted the case for review by January 12, 1986, demanded payment of the $107,-466.00. On December 16, 1986 the State commenced the present action seeking judicial review of the Secretary's final action pursuant to 29 U.S.C. § 817(a), which provided:

> If any prime sponsor is dissatisfied with the Secretary's final action with respect to the disapproval of its comprehensive employment and training plan under section 104 [29 USCS § 814], or if any recipient is dissatisfied with the Secretary's final action with respect to a sanction under section 106 [29 USCS § 816], or if any interested person is dissatisfied with or aggrieved by any final action of the Secretary authorized under section 106 [29 USCS § 816], such prime sponsor, recipient, or person may, *within 60 days after notice of such action,* file with the United States court of appeals for the circuit in which the prime sponsor, recipient, or person resides or transacts business a petition for review of such action.

(emphasis added).

Upon appellate review, the Secretary argued that this court lacked jurisdiction to entertain this action because the State had not timely filed its petition for review of the Secretary's final decision. In particular, the Secretary asserted that under 29 U.S.C. § 817(a), a petition for review of the Secretary's decision must have been filed

"within 60 days after the notice of such [final] action." The Secretary urged that the decision of the ALJ became the final decision of the Secretary on January 12, 1986, twenty days after the State had filed its exceptions to that disposition and, by operation of 20 C.F.R. § 676.91(f), the failure of the Secretary to notify the State of Kentucky by that date that he had accepted the ALJ's decision for review constituted notice of its finality and triggered the accrual of the sixty day time limitation for appeal to the Court of Appeals.

The State responded by asserting that 29 U.S.C. § 817(a) required the Secretary to give actual notice of his intent not to accept a case for review and that the 60 day period within which to file a petition for review by this court did not begin to accrue until such actual notice had been received. Accordingly, the instant petition, filed within sixty days of the October 16, 1986 letter informing Kentucky that the Secretary had not elected to review the ALJ's decision, was timely filed.

Statutory time limits for filing petitions for review of administrative decisions are jurisdictional, *Western Neb. Resources Council v. Environmental Protection Agency*, 793 F.2d 194, 198 (8th Cir.1986), and cannot be enlarged by this court. Fed. R.App.P. 26(b). *See also Bolling v. Director, Office of Workers' Compensation Programs*, 823 F.2d 165 (6th Cir.1987) (order); *Kelley v. Secretary of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987) (statutory time limits for seeking judicial review are jurisdictional and must be strictly enforced). "Administrative agencies have considerable latitude in determining the event that triggers commencement of the judicial review period." *Associated Gas Distribs. v. Federal Energy Regulatory Comm'n*, 738 F.2d 1388, 1391 (D.C.Cir. 1984) (per curiam) (citations omitted). Regulations promulgated pursuant to congressional authorization by the agency charged with the task of administering a statute are considered valid unless they are unreasonable, inappropriate, or plainly inconsistent with the statute. *United States v. Parish of St. Bernard*, 756 F.2d 1116 (5th Cir. 1985), *cert. denied*, 474 U.S. 1070, 106 S.Ct. 830, 88 L.Ed.2d 801 (1986). *See also Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

In the instant case, the Department of Labor was charged with the responsibility of administering CETA. 29 U.S.C. § 828. In performing that responsibility, the Secretary promulgated regulations governing the Department's administration of CETA grants, including provisions establishing procedures for adjudicative hearings to resolve disputes concerning the expenditure of CETA funds. *See* 20 C.F.R. § 676.81 *et seq.* To facilitate the Department's objectives, the Secretary announced the procedure for computing the time period within which judicial review of a disposition was mandated to be commenced.[2]

**2.** § 676.91.(f), prior to May 9, 1984, provided:
*Final decision.* The decision of the Administrative Law Judge shall become the final decision of the Secretary unless the Secretary modifies or vacates the decision within 30 days after it is served.
The section was amended on that date to "clarif[y] the CETA appeals procedures in a manner consistent with the appeals procedures established by the successor Job Training Partnership Act." 49 Fed.Reg. 19639. Section 166(b) of the JTPA provides:
The decision of the administrative law judge shall constitute final action by the Secretary unless, within 20 days after receipt of the decision of the administrative law judge, a party dissatisfied with the decision or any part thereof has filed exceptions with the Secretary specifically identifying the procedure, fact, law, or policy to which exception is tak-

en. Any exception not specifically urged shall be deemed to have been waived. Thereafter the decision of the administrative law judge shall become the final decision of the Secretary unless the Secretary, within 30 days of such filing, has notified the parties that the case has been accepted for review.
29 U.S.C. § 1576(b).
Under the prior version of § 676.91(f), two courts summarily held, without explanation, that "there was no final action until action was taken on [the petitioner's] exceptions." *California Tribal Chairman's Ass'n v. United States Dep't of Labor*, 730 F.2d 1289, 1291 n. 2 (9th Cir.1984). *See also Atlantic County v. United States Dep't of Labor*, 715 F.2d 834, 835 n. 1 (3d Cir.1983). The amended version of § 676.91(f), unlike the prior version, explicitly provides that the ALJ's decision becomes final twenty days after exceptions are filed unless the Secretary

This section, by its terms, notifies the parties of the Secretary's final action and triggers the running of § 817(a)'s sixty day limitation period.

In *Kelley v. Secretary of Labor, supra* the Federal Circuit considered an analogous situation under the Trade Act of 1974. Under that act, employees may apply to the Secretary for trade adjustment assistance. Any party dissatisfied with the Secretary's final action on the application "may, within sixty days after notice of such [final] determination commence a civil action in the United States Court of International Trade for review of such determination." 19 U.S.C. § 2395(a). The Secretary promulgated regulations interpreting this language which provided that "[t]he party seeking judicial review must file for review in the appropriate court within sixty (60) days after the notice of determination has been published in the Federal Register." 29 C.F.R. § 90.19(a). The Federal Circuit upheld the validity of the regulation:

> A reviewing court must accord substantial weight to an agency's interpretation of a statute it administers. *There is no hint in the Trade Act that actual notice is necessary to start the sixty-day limitation period, and utilization of notice in the Federal Register as the triggering event is consistent with the language and structure of the Act.* "Though a court may reject an agency interpretation that contravenes clearly discernible legislative intent, its role when that intent is not contravened is to determine whether the agency's interpretation is 'sufficiently reasonable.'" "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."

812 F.2d at 1380 (emphasis added) (citations omitted). *See also Associated Gas Dis-*

*tribs., supra* (administrative agencies have considerable discretion in determining the event that triggers the judicial review period).

As with the Trade Act of 1974 at issue in *Kelley*, the Secretary in the instant case was charged with administering the CETA legislation, which permitted judicial review of his decision, provided that the appropriate judicial action was commenced within sixty days after notice of the final administrative determination. Neither statute "hinted" that actual notice was required to commence the limitation period, and in both instances the Secretary promulgated regulations providing for constructive notice: under the Trade Act of 1974 by publication in the Federal Register, and under CETA by the lapse of a specified period of time. This court, like the Federal Circuit in *Kelley*, concludes that the regulation providing for constructive notice of the Secretary's final action is not unreasonable or inconsistent with the statute's notice requirement.[3]

■ Furthermore, the Secretary's interpretation of its regulation did not deprive Kentucky of due process of law. In *United States v. Fornea Rd. Boring Co.*, 565 F.2d 1314 (5th Cir.1978), the Fifth Circuit considered this issue in the context of the Occupational Safety and Health Act (OSHA). In that case, the Fornea Road Boring Company (Fornea) was issued a citation for violation of OSHA and duly requested a hearing before a hearing examiner of the Occupational Safety and Health Review Commission (OSHRC). On December 23, 1974, the hearing examiner issued his report concluding that Fornea had indeed violated OSHA and accordingly assessed a monetary penalty. 29 U.S.C. § 661(i) provides, in part, that:

> The report of the hearing examiner shall become the final order of the Commis-

notifies the parties that he has accepted the case for review. Accordingly, *California Tribal Chairman's Ass'n* and *Atlantic County* are not dispositive of the issue presently before this court.

**3.** When Congress has elected to require actual notice of final administrative action to commence accrual of limitations periods, it has ex-

plicitly done so. *See, e.g.*, Title VII of the Civil Rights Act of 1964, § 717(c), 42 U.S.C. § 2000e–16(c) ("[w]ithin thirty days of *receipt of notice* of final action taken by a department, agency, or unit ... an employee ... may file a civil action ..."). *See generally Cooper v. Lewis*, 644 F.2d 1077 (5th Cir.1981).

sion within thirty days after such report by the hearing examiner, unless within such period any Commission member has directed that such report shall be reviewed by the Commission.

On January 21, 1975, Fornea filed a written request for review with the Commission which was not acted upon by the Commission. The government thereafter commenced a court action to collect the penalty assessed against Fornea. The Fifth Circuit rejected Fornea's assertion that the Commission's failure to notify it of the disposition of its request for review constituted a denial of due process:

> Fornea's sole contention is that it was given no notice of the disposition of its request for review or that the hearing examiner's decision and order had become final, and that therefore it had no fair opportunity to appeal the adverse decision on the merits to the appropriate United States Court of Appeals.[3] To remedy this alleged denial of due process Fornea seeks to have its right to appeal the hearing examiner's adverse decision reinstated. Assuming without deciding that due process entitled Fornea to notice that the hearing examiner's decision had become the final order of OSHRC, we find that Fornea had such notice. The statute itself provides that the decision will become final in thirty days unless an OSHRC member directs otherwise within that period. Fornea was expressly told of this provision in the December 23, 1974 order, and it was also expressly informed that it would not receive further communication unless a member directed review. Fornea had notice that if it received no communication from OSHRC by January 22, 1975, the order had become final.

---

3 Aggrieved parties have sixty days within which to appeal a final order of OSHRC to the

**4.** Kentucky cannot argue that it was unaware of the regulation or its contents. "It has long been established that publication of regulations in the Federal Register has the legal effect of constructive notice of their contents to all who are affected thereby." *Bennett v. Director, OWCP,* 717 F.2d 1167, 1169 (7th Cir.1983) (citing 44 U.S.C. § 1507 and *Federal Crop Ins. Corp. v.*

United States Court of Appeals for the appropriate circuit. 29 U.S.C.A. § 660(a), (b).

565 F.2d at 1316. *See also Gustafson v. Board of Governors,* 717 F.2d 242 (5th Cir.1983) (constructive notice of two banks' application for merger, filed before the Federal Reserve Board, by its publication in the Federal Register was constitutionally sufficient notice to commence the limitation period for filing objections to the proposed merger), *cert. denied,* 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 821 (1984).

In the case at bar, the constructive notice provided by 20 C.F.R. § 676.91(f) was constitutionally sufficient to apprise Kentucky of the Secretary's final action. By virtue of the regulation, Kentucky was aware that the Secretary's decision became final twenty days after exceptions were filed.[4] Furthermore, Kentucky was aware that under 29 U.S.C. § 817(a) it had sixty days thereafter in which to file a petition for review in this court. Its failure to do so cannot be attributed to an alleged unconstitutional failure of notice.

For the foregoing reasons, this court concludes that it lacks jurisdiction over this case due to the untimely filing of Kentucky's petition for review. Accordingly, the petition is hereby DISMISSED.

MERRITT, Circuit Judge, dissenting.

Because I believe the actions of the Secretary did not provide Kentucky with requisite notice, I dissent. On January 8, 1986, fifteen days after Kentucky requested review of the ALJ's order, a representative of the Secretary in the Office of Administrative Appeals notified the State that its exceptions had been received. App. 98. At this time, it was the acknowledged "practice [of that office] to notify the parties immediately when the Secretary decide[d] not to assert jurisdiction in a case." App. 100. No such notice was sent. Kentucky reasonably relied on the actions of the Sec-

*Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947)). Furthermore, § 676.91(f) is the same regulation which establishes the time limit for filing exceptions to the ALJ's decision with the Secretary, which task Kentucky completed in a timely fashion, indicating that Kentucky had *actual* notice of the contents of the regulation.

retary in the context of the statute, regulatory scheme, and that administrative practice to conclude that the case had been accepted for review.

Even the Secretary behaved in accordance with that view. By letter of January 20, 1987, the Office of Administrative Appeals acknowledged the practice described above, "notif[ied the State] that the Secretary has not accepted this case for review," and "apologize[d] for our oversight in not sending this letter promptly." App. 99–100. Another communication from the Department's Atlanta office on October 16, 1986, suggests that Kentucky's exceptions were in fact under review after the automatic 20–day cutoff the Secretary now claims applicable ("We have been advised that the Secretary of Labor has declined to review the decision of the [ALJ]"). App. 1.

In these circumstances, I do not believe that the Secretary gave the "notice" required even under the reading of the statute and regulation given by the majority. Thus I need not engage in an extended discussion of the further issues of statutory and regulatory interpretation and of due process, although I do not agree that the majority's resolution is correct.

Finally, I do not read the opinion of the Court to have ruled on any questions on the merits, including Kentucky's challenge to the application of interest to the CETA debt sought by the Secretary pursuant to the provisions of the Debt Collection Act, 31 U.S.C. § 3717 and 3701(c).