**Myrtle CLARK, Petitioner,**

**v.**

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 86–3786.

United States Court of Appeals, Sixth Circuit.

Argued July 28, 1987.

Decided Feb. 5, 1988.

Richard W. Stuhr (argued), White, Rankin Co., LPA, Columbus, Ohio, for petitioner.

Richard A. Seid (argued), Office of the Solicitor, U.S. Dept. of Labor, Washington, D.C., for respondent.

---

Before KENNEDY and NELSON, Circuit Judges, and WEBER, District Judge.[*]

PER CURIAM.

Mrs. Myrtle Clark, the widow of a coal miner, petitions this court for review of a decision in which the Benefits Review Board held (1) that Mrs. Clark had abandoned her initial claim for death benefits, and (2) that the Administrative Law Judge erred in awarding such benefits to Mrs. Clark after considering her second claim therefor. We shall affirm the Board's decision on the abandonment issue, but reverse it insofar as Mrs. Clark's second claim for benefits was denied.

I

The decedent, Kenneth Clark, worked in the coal mines for nine and three-quarter years before he died in 1972 at the age of 47. Mrs. Clark filed a claim for black lung benefits on August 23, 1973. The Social Security Administration (SSA) denied the claim, finding no evidence that Mr. Clark had suffered from pneumoconiosis.

After being told that she was entitled to further review under the Black Lung Benefits Reform Act of 1977, Mrs. Clark opted to have her application reviewed by SSA. That agency again denied her claim, and the file was then transferred to the Department of Labor for review. On August 29, 1980, the Department of Labor denied benefits for lack of evidence. Mrs. Clark took no further action on this claim.

On March 22, 1982, Mrs. Clark filed a second application for benefits. Treating the application as a new claim, rather than as an attempt to have the old claim reconsidered, the Department of Labor ruled against Mrs. Clark on September 14, 1982. She requested a hearing before an administrative law judge, and such a hearing was held on January 24, 1985. Because Mr. Clark's medical records had been destroyed in a fire, there had been little evidence for the agencies to work with up until this point. Prior to the hearing, however, Mr. Clark's body was exhumed and his lungs were removed. The lungs were examined by Dr. William Roberts. From this examination, Dr. Roberts determined that

"[t]he pattern of scarring and pigment deposition within these lungs indicates with reasonable medical certainty that Kenneth Clark suffered from simple coal worker's pneumoconiosis, commonly referred to as black lung, at the time of his death. The patient's cause of death as set forth in the death certificate is acute myocardial infarction of seven days duration. The condition of a patient with myocardial infarction would be worsened by pneumoconiosis and I therefore conclude that Mr. Clark's pneumoconiosis contributed to his death."

Dr. Roberts was the only doctor to look at the lungs of Mr. Clark in their entirety, but another physician, Dr. Naeye, examined eighteen photographs of the lungs and six glass slides containing specimens of the lung tissue. Although Dr. Naeye observed some "black pigment," he also found that the pigment was not accompanied by fibrous tissue or small crystals and observed that there was no focal emphysema. Dr. Naeye determined that Mr. Clark did not suffer from pneumoconiosis.

The ALJ gave greater weight to the report of Dr. Roberts, because Dr. Roberts had examined the lungs themselves in addition to looking at the photographs and glass slides that Dr. Naeye examined. Based on the report of Dr. Roberts, the ALJ found that Mr. Clark had pneumoconiosis which contributed to his death.

The Director appealed this decision to the Benefits Review Board, and Mrs. Clark filed a cross-appeal challenging a determination by the ALJ that she had abandoned her initial claim. The Benefits Review Board affirmed the ALJ as to the abandonment issue, but reversed the award of benefits on the basis of a regulation (20 C.F.R. § 725.309(c)) not cited by either party.

[*] The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

## II

■ Mrs. Clark grounds her claim of nonabandonment on what she sees as the interplay between two regulations. If these two regulations are read as Mrs. Clark would have us read them, the agency would have been required to send her official notice that her claim was on its way to being considered abandoned before any such abandonment could be deemed to have occurred. More specifically, Mrs. Clark argues that the procedural requirements of 20 C.F.R. § 725.409(b) are incorporated into § 725.410(c)(1) by the parenthetical at the end of the latter provision.

The pertinent regulations read as follows:

"**§ 725.410 Initial findings by the deputy commissioner.**

\*    \*    \*    \*    \*    \*

(c) If the evidence submitted does not support an initial finding of eligibility, the deputy commissioner shall so notify the claimant in writing. This notification shall specify the reasons why the claim cannot be approved, the additional evidence necessary to establish entitlement, the right of the claimant to submit additional evidence, and the right to request a hearing. Within 60 days from the mailing of such notice, unless such period is extended by the deputy commissioner for good cause shown, the claimant may submit new evidence or request a hearing. If the claimant:

(1) Takes no action within the specified 60 day period, the claim shall be considered denied by reason of abandonment (see § 725.409)."

"**§ 725.409 Denial of a claim by reason of abandonment.**

(a) A claim may be denied at any time by the deputy commissioner by reason of abandonment where the claimant fails:

(1) To undergo a required medical examination without good cause; or,

(2) To submit evidence sufficient to make a determination of the claim; or,

(3) To pursue the claim with reasonable diligence.

(b) If the deputy commissioner determines that a denial by reason of abandonment is appropriate, *he or she shall notify the claimant of the reasons for such denial and of the action which must be taken to avoid a denial by reason of abandonment.* If there is no response to the notice within 30 days after such notice is sent, the claim shall be considered denied by reason of abandonment. If the claimant responds in a timely fashion, indicating a desire to pursue the claim, by requesting a hearing or indicating the intent to submit additional evidence, the deputy commissioner shall, if a hearing is requested, proceed in accordance with § 725.412 or allow a reasonable time of not less than 60 days for the claimant to take the specified remedial action. If the claimant completes the action requested within the time allowed, the claim shall be developed, processed and adjudicated as specified in this part. If the claimant does not fully comply with the action requested by the deputy commissioner, the deputy commissioner shall so notify the claimant. If the claimant does not request a hearing or fully comply with the action requested by the deputy commissioner within 30 days of such notification, the claim shall be considered denied by reason of abandonment, except that a new claim may be filed at any time and new evidence submitted where the requirements of § 725.310 are not met." (Emphasis supplied.)

Because the deputy commissioner never sent Mrs. Clark any notice of the sort prescribed in § 725.409(b), Mrs. Clark claims that the ALJ's finding of abandonment was improper.

We do not believe that the advice at the end of § 725.410(c)(1) to "see § 725.409" was intended to incorporate in the former regulation the whole panoply of procedural hoops created in the latter. As the Director points out, the two sections cover different stages of the administrative process. Section 725.409 covers situations where the record does not contain sufficient evidence to allow the agency to make a factual determination. Section 725.410

covers situations where there *is* enough evidence in the record and the appropriate agency *has* made its factual determination. To quote from the Director's brief,

> "[t]he parenthetical cross-reference merely specifies that the effect of a denial by reason of abandonment under 20 CFR 725.410 is the same as under 20 CFR 725.409. Furthermore, the cross-reference clarifies that a denial under 20 CFR 725.410(c) does not preclude the claimant from filing a new claim and submitting new evidence outside the modification period."

We think the Director's characterization is correct.

### III

■ The regulation on which the Benefits Review Board relied in reversing the decision in favor of Mrs. Clark on her second claim, 20 C.F.R. § 725.309(c), was not cited to the Board by either party, and the Director has now waived reliance on that regulation. Instead, the Director asks us to affirm the denial of benefits on the ground that there was not sufficient evidence "to establish the necessary causal nexus between the miner's pneumoconiosis and his death from myocardial infarction...."

"The finding of an ALJ in a black lung case may not be set aside if it is based on substantial evidence viewing the record as a whole, even if we would have taken a different view of the evidence were we the trier of facts." *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 486 (6th Cir.1985). We think the testimony of Dr. Roberts constituted evidence sufficiently substantial to support the ALJ's award of benefits. Having made an examination of Mr. Clark's lung, Dr. Roberts found that Mr. Clark suffered from pneumoconiosis. Dr. Naeye's contrary conclusion was based on more limited evidence; unlike Dr. Roberts, Dr. Naeye did not have access to the complete lungs.

Dr. Roberts opined that the pneumoconiosis did contribute to Mr. Clark's death:

> "Q  Now, doctor, given what you just described, the ailments which afflicted Mr. Clark, and in addition, if you would include in that scenario the presence of pneumoconiosis, would it be accurate or not to state that there was a multiplicity of causes which ultimately led to Mr. Clark's demise?
>
> A  I think that would be an appropriate conclusion.
>
> Q  Well, in your opinion, did the presence of pneumoconiosis in any way contribute to, either in the sense of bringing about or worsening, the acute myocaridal infarction that Mr. Clark experienced?
>
> A  In the case of Mr. Clark or any patient who suffered an acute myocardial infarction, while also suffering from pulmonary disease, the pulmonary disease would worsen the prognosis and increase the likelihood of death following myocardial infarction.
>
> Q  Why is that, doctor, in lay terms?
>
> A  The death of the heart tissue that occurs when the blood supply is lost is due to loss of oxygen by that tissue. When the blood being supplied to the heart is lower in oxygen to begin with due to failure of the lungs to provide adequate oxygen to the blood, the damage to the heart will be worsened.
>
> Q  Doctor, would you have an opinion within a reasonable degree of medical and scientific certainty as to whether or not the presence of pneumoconiosis in Mr. Clark was a contributing cause to his death?
>
> A  I would say given the history of myocardial infarction and the reasons I just alluded to, that I would conclude that pneumoconiosis was a contributing cause to his death from myocardial infarction."

We cannot say that this testimony was insufficient to support the ALJ's finding of the necessary causal nexus. There is no need for us to ask the Benefits Review Board to make its own review of the evidence, because the Board must apply the same standard of review that we apply.

*Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1116 (6th Cir.1984), *cert. denied,* 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985) (an ALJ's "findings of fact and conclusions of law may only be set aside by the Board if not supported by substantial evidence, or not in accordance with the law").

### IV

The decision of the Benefits Review Board is REVERSED insofar as it rejected the ALJ's award of benefits, and the case is REMANDED with instructions to reinstate the award.