Anna JORDAN, Petitioner–Appellant,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent–Appellee.

No. 89–3068.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 10, 1989.

Decided Dec. 22, 1989.

Francis X. Lee (argued), Stephen T. Mac-Connell, Clark & Eyrich, Cincinnati, Ohio, for petitioner-appellant.

Sylvia T. Kaser, Priscilla A. Schwab, Mary Helen Mautner, Charles I. Hadden, Allen H. Feldman, Edward D. Sieger (argued), U.S. Dept. of Labor, Office of the Solicitor, Washington, D.C., for respondent-appellee.

Before KEITH, MILBURN and NORRIS, Circuit Judges.

KEITH, Circuit Judge.

On September 16, 1943, Lawrence Jordan ("the miner") died in an explosion while working at the Three Point Coal Mine in Harlan, Kentucky.[1] His wife, petitioner Anna Jordan ("Jordan"), appeals from the decision and order of the Benefits Review Board ("the Board"), denying her survivor's claim under the Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901–945 ("the Act"). For the reasons stated below, we AFFIRM in part and REVERSE in part.

I.

Jordan has filed three survivor's claims for black lung benefits. On March 22, 1973, she filed her first claim with the Social Security Administration ("the SSA"), pursuant to Part B of the Act[2]. This claim was denied originally by the SSA on June 22, 1973, and upon reconsideration on July 25, 1974. Proceeding under the 1978 amendments to the Act,[3] Jordan requested that the Department of Labor ("the DOL") review her claim. Jordan's claim ("the 1979 claim") was subsequently denied by the DOL's Office of Workers Compensation Programs ("the OWCP"). The Director, OWCP ("the Director"), found insufficient evidence to establish Jordan's en-

---

1. At the time of his death, the miner was 40 years old and his job required him to load coal onto a conveyor belt. The miner's death certificate listed burns and shock as the cause of death, which occurred while he was working in the mines.

2. Black lung benefit claims are adjudicated under Part B or Part C of the Act, depending on when they were filed. The filing deadline for a survivor's claim payable under Part B was December 31, 1973. *See* 30 U.S.C. § 924(a)(3), (e). Survivor's claims filed after this date are payable under Part C. *See* 30 U.S.C. § 932(a). The Department of Labor ("the DOL") reviews Part C claims, while the SSA reviews Part B claims. *See, e.g., Mullins Coal Co. v. Director, OWCP,* 484 U.S. 135, 139, 108 S.Ct. 427, 429, 98 L.Ed.2d 450 (1987).

3. Congress created a special presumption ("the special presumption"), effective March 1, 1978, to assist the survivors of long-term miners. To qualify for the special presumption, the survivor is required to prove: first, that the miner died on or before March 1, 1978; and second, that the miner was employed for 25 years or more in one or more coal mines before June 30, 1971. If, in response, the DOL fails to prove that the miner was not partially or totally disabled by pneumoconiosis at the time of death, then the special presumption allows the survivor to be awarded benefits. *See* Black Lung Benefits Reform Act of 1977, Pub.L. No. 95–239, § 3(a), 92 Stat. 96 (creating 30 U.S.C. § 921(c)(5)). *See also* 20 C.F.R. § 718.306. Congress also provided that survivors who had previously been denied black lung benefits by SSA, could elect to have SSA or DOL perform a second review of their claims. *See* 30 U.S.C. § 945(a).

titlement to benefits. On August 1, 1979, the Director sent Jordan a standard denial letter ("the 1979 Letter") and notified her that if she did not take action within 60 days, her claim would be closed. Jordan did not respond.

On April 2, 1981, Jordan filed her second claim for survivor's benefits ("the 1981 claim"). On June 22, 1981, the Director denied the 1981 claim with a standard letter, notifying Jordan of the procedures for appeal and the reasons for the denial. The letter stated that the 1981 claim was denied because the evidence failed to prove: that the miner had suffered from pneumoconiosis or black lung disease; that the miner's work had caused the disease; or that the disease had caused the miner's death or total disability. The letter concluded:

If you disagree with this determination you may further pursue your claim if you:

(1) SUBMIT ADDITIONAL EVIDENCE; ...

OR

(2) REQUEST A HEARING ON YOUR CLAIM; ...

If you intend to pursue your claim, you may wish to obtain a representative in order to be sure that your rights are fully protected. We will furnish copies of all the evidence in your claim to any representative you choose. If you obtain a representative, you must complete the enclosed authorization ... and return it to this office.

If you do not take any action within 60 days your claim will be closed.

Letter from the Office of Workers' Compensation Programs, U.S. Department of Labor, to Anna Jordan (June 22, 1981), Joint Appendix at 29–30 (hereinafter "the 1981 Letter").

Jordan did not respond to the 1981 Letter until April 5, 1983. On April 11, 1983, the Director sent Jordan a letter stating that:

A review of our records indicates that your application was denied on June 22, 1981. In that the determination was not appealed within sixty (60) days of the finding of non-entitlement, your claim was administratively closed due to abandonment.

Should you desire to be further considered for benefits provided by the [A]ct, you will need to file a new application.

Letter from the Office of Workers' Compensation Programs, U.S. Department of Labor, to Anna Jordan (Apr. 11, 1983), Joint Appendix at 39 (hereinafter "the 1983 Letter").

On May 19, 1983, Jordan filed a third claim for survivor's benefits ("the 1983 claim"). The Director denied the 1983 claim on August 25, 1983. Jordan retained an attorney, who requested a hearing or an opportunity to submit more evidence.

Jordan and her attorney met with the Director's representatives on November 14, 1983. The parties were unable to resolve several issues, namely: the length of the coal miner's employment; the existence of pneumoconiosis; the contribution of pneumoconiosis to the miner's death; or the causal relationship between the miner's employment and his alleged respiratory problems. In his memorandum of conference, the Director reported that the evidence failed to show that the miner had suffered from pneumoconiosis or had worked in the mines for 25 years. The Director also argued that because Jordan had filed the 1983 claim after June 30, 1982, she needed to show that pneumoconiosis contributed to the miner's death, pursuant to the 1981 amendments to the Act.[4] In response, Jor-

---

**4.** In 1981, Congress repealed the Act's special presumption to assist the survivors of miners who had worked in the mines for at least 25 years. *See supra* note 3 (discussing 30 U.S.C. § 921(c)(5)). Congress legislated that there would no longer be a special presumption for "claims filed on or after the day that is 180 days after the effective date of the Black Lung Benefits Amendments of 1981." Pub.L. No. 97–119, tit. II, §§ 202(b), 203(a)(5), 95 Stat. 1643, 1644

(amending 30 U.S.C. § 921(c)(5)). Since the 1981 amendments were enacted on December 29, 1981, the special presumption does not apply to claims filed on or after June 30, 1982. In 1981, Congress also repealed a provision of the Act that granted survivor's benefits if the miner was totally disabled by pneumoconiosis at the time of death. *See* Pub.L. No. 97–119, tit. II, § 203(a)(3), (4), 95 Stat. 1644 (amending 30 U.S.C. §§ 901, 922). Because of the 1981

dan requested a hearing before an Administrative Law Judge ("ALJ").

The ALJ heard Jordan's case on June 26, 1986. At the hearing, Jordan submitted a statement from her sister-in-law, who recalled that, at age 13, the miner had worked in the Corono Coal Mine in Birmingham, Alabama. Under cross examination, Jordan admitted that the miner had been laid off several times and that the operations of the mines were sporadic at the time of his death. Jordan and her daughter, the only witnesses, presented no medical evidence, but testified that as a result of the miner's work, he developed respiratory problems and physical limitations several years before he died. Both witnesses testified that although the miner's work was hard, easier jobs were not available.

On February 23, 1987, the ALJ issued his decision and order awarding survivor's benefits to Jordan upon the 1981 claim. The ALJ concluded that Jordan qualified for the special presumption ("the special presumption") granted to the survivors of long-term miners. *See supra* note 3. Based on the testimony of Jordan and her daughter, the affidavits they submitted, and the Director's failure to effectively rebut this evidence, the ALJ determined that the miner had worked 25 years in the mines and had died prior to March 1, 1978, thus qualifying Jordan's 1981 claim for the special presumption.

The ALJ did not dispute the Director's rebuttal argument that, under the 1981 amendments to the Act, the special presumption did not apply to the 1983 claim, which was filed after June 30, 1982. *See supra* note 4. The ALJ did dispute, however, the Director's contention that the only claim at issue was the 1983 claim. The ALJ reasoned that the Director's 1981 Letter was defective because it failed to advise Jordan that if she desired assistance for an appeal, she could secure an attorney through a contingent fee arrangement. The ALJ then determined: first, that the 1981 claim, filed on April 2, 1981, was the original claim; second, that the special presumption should be applied to the 1981 claim; and third, that upon application of the special presumption, the 1981 claim qualified Jordan for survivor's benefits. In addition, the ALJ concluded that the Director had failed to rebut the special presumption by proving that the miner was neither totally nor partially disabled by pneumoconiosis.

On November 29, 1988, the Board reversed the ALJ's order granting survivor's benefits to Jordan. The Board also denied the Director's request to remand the 1983 claim, relying on 20 C.F.R. §§ 725.309 [5], 725.310 [6] and 725.410 [7], as well as *Clark v. Director, OWCP*, 9 Black Lung Rep. 1–205 (Ben Rev.Bd.1986), *rev'd on other grounds*, 838 F.2d 197 (6th Cir.1988). In *Clark*, the Board construed the DOL's du-

amendments, individuals seeking survivor's benefits must now prove that the miner died from pneumoconiosis.

**5.** 20 C.F.R. § 725.309(c) provides, in pertinent part, that:

If an earlier [survivor's] claim subject to review under Part 727 of this subchapter has been denied after review, a new claim filed under this part shall also be denied, on the grounds of the prior denial, unless the deputy commissioner determines that there has been a material change in conditions or the later claim is a request for modification....

*Id.*

**6.** 20 C.F.R. § 725.310(a) provides that:

Upon his or her own initiative, or upon the request of *any party* on the grounds of a change in conditions or because of a mistake in a determination of fact, the deputy com-

missioner may, at any time before one year from the date of the last payment of benefits, or at any time before *one year* after the denial of a claim, reconsider the terms of an award or the denial of benefits.

*Id.* (emphasis added).

**7.** 20 C.F.R. § 725.410(c) provides, in pertinent part, that:

If the evidence submitted does not support an initial finding of eligibility, the deputy commissioner shall so notify the claimant in writing.... Within 60 days from the mailing of such notice, unless such period is extended by the deputy commissioner for good cause shown, the claimant may submit new evidence or request a hearing. If the claimant:

(1) Takes no action within the specified 60 day period, the claim shall be considered denied by reason of abandonment....

*Id.*

plicate claims regulations, specifically 20 C.F.R. § 725.309(c), to require denial of a survivor's claim if the survivor had an earlier denied claim that had not been pursued within one year of denial. *See Clark*, 838 F.2d at 198. *See also* 20 C.F.R. § 725.310. Thus, in the present case, the Board concluded that the ALJ was required to find that the 1981 claim was barred from consideration because Jordan failed to act within one year of the denial of the 1979 claim, and that the 1983 claim was barred from consideration due to Jordan's failure to act within one year of the denial of the 1981 claim.

The Board also rejected the ALJ's application of the special presumption. The Board reversed the award of benefits based on the 1981 claim, explaining that the ALJ erred in finding that the 1981 Letter was required to specifically state that Jordan could obtain an attorney by a contingent fee arrangement. The Board suggested that if there was a misunderstanding, Jordan was under a duty to make a reasonable inquiry for an explanation of the 1981 Letter and 60–day denial notice. Because Jordan failed to make such an inquiry or to contact an attorney or governmental official for assistance, the Board held that the denial of the 1981 claim did not prejudice Jordan's rights.

Jordan petitioned this court for review of the Board's decision on January 20, 1989.

## II.

In *Welch v. Benefits Review Bd.*, 808 F.2d 443 (6th Cir.1986), we stated that:
This court has a limited scope of review over the decisions of the Benefits Review Board. The Board itself may set aside an administrative law judge's findings of fact and conclusions of law only if they are not supported by substantial evidence, or not in accordance with law. Our scope of review is limited to scrutinizing Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations. *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1116 (6th Cir.1984),

*cert. denied*, 471 U.S. 1116 [105 S.Ct. 2357, 86 L.Ed.2d 258] (1985).

*Welch*, 808 F.2d at 445. Thus, both this court and the Board examine the ALJ's decision to determine whether it is consistent with the Act and "supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). *See Warman v. Pittsburg & Midway Coal Min. Co.*, 839 F.2d 257, 258 (6th Cir.1988).

The Black Lung Benefits Act was enacted to "provide benefits ... to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease." 30 U.S.C. § 901(a). Under the Act, pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b).

## III.

### A.

On appeal, Jordan contends that the Board erred in reversing the ALJ's order granting her survivor's benefits. The Director argues that because Jordan abandoned the 1979 and 1981 claims, reversal of the ALJ's order was appropriate. We agree with the argument advanced by the Director and hold that the Board correctly reversed the ALJ's award of benefits to Jordan, thereby rejecting the 1979 and 1981 claims.

It is well-settled that miners and their survivors must strictly adhere to the substantive and procedural requirements of the Black Lung Benefits Act and its implementing regulations. In *Danko v. Director, OWCP*, 846 F.2d 366 (6th Cir.1988), we dismissed the claim of a miner who failed to meet the statutory 60–day time period in which to appeal an ALJ decision to the Board. *See id.* at 369. Moreover, in *Bankes v. Director, OWCP*, 765 F.2d 81 (6th Cir.1985), we found no abuse of discretion in the Board's refusal to consider an application for attorney's fees filed 14 months after the expiration of the 30–day period established for filing such requests.

*See id.* at 82. *Cf. Consolidation Coal Co. v. Gooding,* 703 F.2d 230, 232 (6th Cir.1983) (finding no abuse of discretion where Board dismissed petitioner's appeal for failure to respond to show cause order). Although these requirements may seem harsh to individual claimants, they further the goals of providing each claimant with a just, efficient and final resolution of his or her black lung benefit claim at the agency level. *See Consolidation Coal,* 703 F.2d at 232.

■ We are persuaded that the Board acted within its discretion in finding that Jordan abandoned both the 1979 and 1981 claims. In both the 1979 and 1981 Letters, Jordan received notice that her case would be closed unless she took action within 60 days. Like the attorney in *Bankes* who failed to request attorney's fees for over 14 months, Jordan failed to take any action for over a year after she was notified that the 1979 claim had been denied. Similarly, Jordan did not contact an attorney or governmental official for over a year after she was notified that the 1981 claim had been denied. After considering the record as a whole, we hold, on the grounds that Jordan abandoned the 1979 and 1981 claims, that the Board correctly reversed the ALJ's order granting Jordan survivor's benefits.

Jordan challenges the Board's findings that she abandoned the 1979 and 1981 claims. Initially, she argues that the Board's decision is contradicted by the record evidence. Jordan contends that, on March 15, 1979, she sent the OWCP a handwritten note indicating that she did not have additional information to support the 1979 claim, and was financially and physically unable to secure more information. Jordan's note, however, fails to rebut the Board's finding of abandonment. Jordan sent the note to the OWCP *prior to* receiving the 1979 Letter and 60–day denial notice. In addition, Jordan presented no evidence indicating that she responded, *in any manner,* to the 1981 Letter and 60–day denial notice. As in *Consolidation Coal,* Jordan's "half-hearted" pursuit of her claims justifies the Board's finding of abandonment. *See Consolidation Coal,* 703 F.2d at 233.

■ Jordan also challenges the Board's finding of abandonment with a waiver argument. She contends that the Director waived his right to contest the ALJ's application of the special presumption to the 1981 claim. However, the Director's memorandum of conference, dated November 14, 1983, clearly stated that because the 1983 claim was filed after June 30, 1982, (the date on which the special presumption was repealed), Jordan was required to prove that pneumoconiosis contributed to the miner's death. *See supra* note 4. In addition, the issues at the ALJ hearing were determined by the memorandum of conference, and that memorandum was never repudiated by the Director.

■ Jordan next advances an estoppel argument. She contends that because DOL delayed in the promulgation of new regulations to repeal the special presumption, she erroneously relied on the old regulations. The Supreme Court has held, however, that failure to fully publicize the rights granted by an Act of Congress does not " 'give rise to an estoppel against the government.' " *Lyng v. Payne,* 476 U.S. 926, 935, 106 S.Ct. 2333, 2340, 90 L.Ed.2d 921 (1986) (quoting *INS v. Hibi,* 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973)). In the case at bar, there is no evidence indicating that Jordan delayed filing any of the claims due to her reliance on misinformation. Moreover, DOL's proposed regulations governing the repeal of the special presumption were published before the repeal became effective. Survivors of long-term miners were specifically notified that the special presumption would no longer be available for claims filed after June 30, 1982. *See* 47 Fed.Reg. 22,674, 22,676 (1982). Because publication in the Federal Register constitutes constructive notice of the contents of federal regulations, Jordan could not have reasonably relied upon the unamended regulations. *See* 44 U.S.C. § 1507; *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Kentucky ex rel. Cabinet*

*for Human Resources v. Brock*, 845 F.2d 117, 122 n. 4 (6th Cir.1988).

### B.

█ Jordan also argues that the Board erred in rejecting the ALJ's finding that the 1981 Letter should have informed Jordan, as a matter of law, of her right to obtain an attorney through a contingent fee arrangement. Jordan contends that her rights guaranteed by the due process clause of the fifth amendment have been violated. In response, the Director argues that because the 1981 Letter satisfies the requirements of the due process clause, the Board correctly rejected the ALJ's finding. We agree.

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court held that the due process clause requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* at 313, 70 S.Ct. at 656–57. The required notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657. Thus, in statutory entitlement cases, there are two significant due process requirements. First, affected individuals must receive "timely and adequate notice detailing the reasons" for the threatened deprivation of a protected interest. *See Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970). Second, where the affected individuals are "of various levels of education, experience, and resources," they must receive notice of the availability of a procedure for protesting the threatened deprivation. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 n. 15, 98 S.Ct. 1554, 1563 n. 15, 56 L.Ed.2d 30 (1978).

In *Warner Coal Co. v. Director, OWCP*, 804 F.2d 346 (6th Cir.1986), we held that the Black Lung Benefits Act follows the due process clause and requires that the petitioner "be given adequate notice and an opportunity to defend." *Id.* at 347. We remain mindful, however, of the deference we owe to Congress and "the fact that the very nature of the due process inquiry indicates that the fundamental fairness of a particular procedure does not turn on the result obtained in any individual case." *Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 321, 105 S.Ct. 3180, 3189, 87 L.Ed.2d 220 (1985). In addition, we recognize that "procedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions." *Mathews v. Eldridge*, 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976). In most cases, the decision whether to award black lung benefits will turn on standard medical reports submitted by unbiased physicians.

In the present action, Jordan argues that the 1981 Letter and 60–day denial notice should have explained that attorneys are available to black lung benefit claimants without cost. *See* 20 C.F.R. § 725.367 (requiring payment of successful claimant's attorney's fees by the responsible coal mine operator). Jordan continues that because the 1981 Letter did not notify her of the contingent fee arrangement, it violated the due process clause. Jordan concludes, with the approval of the ALJ, that due to the deficiencies in the 1981 Letter, the 1981 claim remains valid and qualifies Jordan for survivor's benefits.

Jordan, however, has failed to prove that the Director's correspondence was unconstitutional. *Cf. Hynes v. Grimes Packing Co.*, 337 U.S. 86, 101, 69 S.Ct. 968, 978, 93 L.Ed. 1231 (1949) ("[A federal] administrative order is presumptively valid."). First, the Director's 1981 Letter to Jordan satisfied basic due process requirements. In plain language, the 1981 Letter explained to Jordan the reasons for the denial of the 1981 claim and available procedures for protesting the denial. *See Memphis Light*, 436 U.S. at 14–15, 98 S.Ct. at 1562–63. *The 1981 Letter also specifically informed Jordan of her right to obtain a representative; to submit additional evidence; or to request a hearing.* Second, Jordan received constructive notice of her right to

obtain an attorney at no charge by virtue of the publication of 20 C.F.R. § 725.367 in the Federal Register and the Code of Federal Regulations. *See* 44 U.S.C. § 1507; *Federal Crop Insurance*, 332 U.S. at 384–85, 68 S.Ct. at 3; *Kentucky*, 845 F.2d at 122. Third, Jordan's implied argument—deficiencies in the 1981 Letter caused her to abandon the 1981 claim—is rebutted by the *actions* of thousands of miners and their survivors who have responded to the Director's standard denial letters and have requested timely ALJ hearings to protect their rights. *See Mathews*, 424 U.S. at 344, 96 S.Ct. at 907 (upholding procedural rules applicable to "the generality of cases"). Thus, the Board's reversal of the ALJ's award of benefits upon the 1981 claim is justified by Jordan's *inaction* and failure to submit a timely response to the 1981 Letter. *See* 20 C.F.R. § 725.310(a) (allowing reconsideration of denied claims, upon request of either party, at any time before one year after the original denial). Given the record before us, "requiring the petitioner to comply with the time limits set out in the regulations does not violate principles of due process." *Bennett v. Director, OWCP*, 717 F.2d 1167, 1169 (7th Cir.1983).

### C.

Although the Board correctly reversed the ALJ's finding that the 1981 claim was meritorious, we remain troubled by both the ALJ's and the Board's disposition of the 1983 claim. Even though the Director has not relied on the duplicate claims regulations at any stage of these proceedings, the Board summarily rejected the 1983 claim on the basis of Jordan's previously denied claims, and improperly refused to consider the 1983 claim on its own merits. *Compare Clark*, 838 F.2d at 200 (considering later-filed claim where original claim was denied and Director waived reliance on a duplicate claim regulation, 20 C.F.R. § 725.309(c)).

When reviewing decisions of the Board, this court may not function as the trier of facts. Factfinding remains within the province of the ALJ, who has the opportunity to cross-examine witnesses and to determine the credibility of the miners or their survivors. *See Director, OWCP v. Rowe*, 710 F.2d 251, 255 (6th Cir.1983). In the present case, the ALJ examined the 1981 claim, under the regulations applicable in 1981, and found that Jordan had met the requirements to invoke the special presumption, and that the Director had failed to rebut the presumption. The ALJ did not examine the 1983 claim, under the regulations applicable in 1983. Moreover, the ALJ did not engage in factfinding to determine whether pneumoconiosis was a "substantially contributing cause or factor leading to the miner's death." 20 C.F.R. § 718.205(c)(2). Thus, the ALJ should now determine whether there is substantial evidence in the record to support an order granting Jordan survivor's benefits upon the 1983 claim.

### IV.

On the 1979 and 1981 claims, we affirm the order of the Board reversing the ALJ's award of survivor's benefits to Jordan. On the remaining 1983 claim, we reverse the order of the Board and remand to allow the ALJ to determine whether the facts indicate that Jordan is entitled to benefits.

Accordingly, the order of the Benefits Review Board is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.